UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID MAVASHEV and ELEFUND, LLC,

                        Plaintiffs,

               - against -

SERIK KALDYKULOV, NATHAN
RODLAND, ELEFUND II, L.P., ELEFUND
GP II, LLC, ELEFUND MANAGEMENT
COMPANY LLC, ELEFUND CONTINUITY
II, LLC, ARIEL a/k/a ARIK CRISSI,
FUNDAMATIC LLC, and ELEFUND
CONTINUITY III, LLC,

                      Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-906 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

       Plaintiffs David Mavashev ("Mavashev") and Elefund, LLC ("Elefund LLC") (together, "Plaintiffs") bring this lawsuit asserting a litany of claims against Defendants Serik Kaldykulov ("Kaldykulov"), Nathan Rodland ("Rodland"), Elefund II, L.P. ("Fund II"), Elefund GP II, LLC ("GP II"), Elefund Management Company LLC ("Elefund Management Company"), Elefund Continuity II, LLC ("Continuity II"), Ariel a/k/a Arik Crissi ("Crissi"), Fundamatic LLC ("Fundamatic"), and Elefund Continuity III, LLC ("Continuity III") (together, "Defendants"). Before the Court is Defendants' combined motion to: (1) dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction; (2) transfer venue to the Northern District of California; (3) compel arbitration; and/or (4) dismiss Plaintiffs' claim for trademark cancellation for failure to state a claim upon which relief can be granted. For the reasons to follow, the Court: (1) grants Defendants' motion to dismiss for lack of personal jurisdiction as to Rodland, Fundamatic, Fund II, GP II, Elefund Management Company, Continuity II, and Continuity III, but denies the motion as to Kaldykulov and Crissi (except as to some claims); (2) denies the motion to transfer venue;

(3) grants the motion to compel arbitration as to the remaining claims against Kaldykulov and Crissi; and (4) denies the motion to dismiss, for failure to state the trademark cancellation claim, against Elefund Management Company.  This matter will be stayed pending arbitration.

## BACKGROUND

### I.    Factual Background[1]

In 2012, Plaintiff Mavashev, then a resident of New York, and Defendant Kaldykulov, a citizen of Kazakhstan then residing outside the United States, became business partners and formed Elefund LLC, a New York company with its principal place of business in New York, after Kaldykulov approached Mavashev about setting up a company to invest in start-ups. (Am. Compl., Dkt. 1-2 ("Am. Compl.") ¶¶ 2–3, 17, 19; Decl. of David Mavashev in Opp'n to Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 11-1 ("Mavashev Decl.") ¶¶ 2–4.)  To that end, Mavashev and Kaldykulov entered into an operating agreement—drafted by Kaldykulov—under which they each contributed equal amounts of initial capital to Elefund LLC, obtained a 50% stake in the company, and agreed to "act in unison."  (Am. Compl. ¶¶ 31–32; Mavashev Decl. Ex. A, Dkt. 11-2 ("Elefund LLC Operating Agreement") ¶¶ 6, 12; *id.* at ECF 5.[2])  To facilitate their investment activities, Mavashev and Kaldykulov opened an investment account for Elefund LLC at a bank located in Roslyn, New York.  (*See* Mavashev Decl. ¶ 7.)

Between 2012 and 2015, Elefund LLC invested in a number of companies whose stock prices subsequently rose dramatically.  (Am. Compl. ¶ 3.)  Given their success, in 2015, Mavashev

---

[1] In resolving a motion to dismiss for lack of personal jurisdiction, the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor."  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *see also Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 75 (2d Cir. 2023).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

and Kaldykulov agreed to expand the "Elefund" business by raising capital from outside investors through two new entities: an investment fund, called Elefund L.P. ("Fund I"), and the fund's general partner, Elefund GP I LLC ("Fund I General Partner"), both Delaware entities with their principal offices in New York. (Am. Compl. ¶¶ 4–5; Mavashev Decl. ¶¶ 10–11; Mavashev Decl. Ex. D, Dkt. 11-5 at 1; Mavashev Decl. Ex. E, Dkt. 11-6 at 1, 5.) Mavashev and Kaldykulov contributed all of Elefund LLC's investment assets to Fund I, which diluted their shares in Elefund LLC's existing investments, but allowed them to market Fund I's limited partnership interests to prospective investors. (Am. Compl. ¶¶ 4–5.) Mavashev and Kaldykulov also agreed to be equal partners in Fund I General Partner, thus sharing equally in Fund I's management fees. (*See id.*; Mavashev Decl. ¶ 10.) To assist with administering their business, Mavashev and Kaldykulov hired an operations manager, Defendant Crissi, through Crissi's company, Fundamatic, also named as a defendant in this case. (*See* Am. Compl. ¶¶ 12, 57–70.) Crissi and Fundamatic were paid by Elefund LLC. (Mavashev Decl. ¶ 26; Mavashev Decl. Ex. Q, Dkt. 11-18, at ECF 2.)

Around 2015, Mavashev alleges, Kaldykulov began a scheme to secretly cut Mavashev out of their businesses. (Am. Compl. ¶ 6; Mavashev Decl. ¶ 13.) Kaldykulov created another entity—Defendant Elefund Management Company—from which he secretly excluded Mavashev. (Am. Compl. ¶ 6.) Kaldykulov subsequently used Elefund Management Company to "siphon off" management fees that would have otherwise been paid to Mavashev as a 50% member and co-manager of Elefund LLC. (*See id.*)

Mavashev alleges that Kaldykulov also launched a second "Elefund" fund—Defendant Fund II—with a different business partner, Defendant Rodland, and that Kaldykulov did so without Mavashev's or Elefund LLC's consent. (*Id.* ¶¶ 7–12.) Mavashev and Kaldykulov had discussed creating a second fund, and Kaldykulov led Mavashev to believe that Kaldykulov and Crissi were

working on Elefund LLC's behalf to create it.  (*Id.* ¶¶ 71–77.)  In reality, Mavashev had been cut out.  (*Id.* ¶¶ 10–13, 78.)  To that end, Crissi and Kaldykulov edited the Elefund LLC and Fund I joint website to delete all references to Mavashev as a principal, co-founder, or manager of "Elefund."  (*Id.* ¶ 13.)  Defendants Kaldykulov and/or Fund II, GP II (the general partner of Fund II), and Elefund Management Company went on to create additional entities—Continuity II and Continuity III (also named as defendants)—utilizing the "Elefund" trade name for their commercial benefit.  (*Id.* ¶¶ 83, 111.)

On October 1, 2019, Elefund Management Company—through Kaldykulov and Crissi—submitted an application for trademark protection to the U.S. Patent and Trademark Office ("USPTO"), claiming that Elefund Management Company LLC had used the "Elefund" mark in commerce since "at least as early as May 15, 2012"—more than three years before Elefund Management Company LLC was formed.  (*Id.* ¶¶ 14, 107.)  The USPTO granted Elefund Management Company's application to register the "Elefund" mark.  (*Id.* ¶¶ 14, 109.)

## II.    Procedural History

On July 19, 2021, Plaintiffs filed their initial complaint against Defendants in New York state court, alleging breach of fiduciary duty under the New York Limited Liability Company Act, misappropriation of corporate opportunity under the New York Limited Liability Company Act, two counts of breach of contract, tortious interference with contract, tortious interference with prospective business relations, unjust enrichment, aiding and abetting breach of fiduciary duty, and conspiracy to commit fraud.  (Dkt. 1-1 ¶¶ 139–205.)  On January 31, 2022, Plaintiffs filed the operative Amended Complaint, which added a second count of aiding and abetting breach of fiduciary duty and new causes of action for deceptive acts and practices under the New York General Business Law and for common law unfair competition.  (Am. Compl. ¶¶ 189–99, 208–

17.)  The Amended Complaint also asserted two new causes of action under federal law: a claim of unfair competition arising under 15 U.S.C. § 1125(a) and a claim for cancellation of Elefund Management Company's trademark for the "Elefund" mark.  (*Id.* ¶¶ 200–07, 218–24.)  Defendants removed the action to federal court in this district on February 18, 2022.  (Dkt. 1.)

On April 20, 2022, Defendants served the instant motion seeking to (1) dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction, (2) transfer venue to the Northern District of California, (3) compel arbitration, and (4) dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 10-1 ("Defs.' Mem.") at 1, 40.)  On May 18, 2022, Plaintiffs served their opposition papers.  (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 11 ("Pls.' Opp'n") at 41.)  On June 1, 2022, Defendants filed a reply.  (Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 12 ("Defs.' Reply") at 26.)

## DISCUSSION

## I.   Defendants' Rule 12(b)(2) Motion to Dismiss Based on Lack of Personal Jurisdiction

### A.   Legal Standards

A plaintiff bears the burden of establishing personal jurisdiction "with respect to each claim asserted."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018); *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012).  On a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing.  *MacDermid*, 702 F.3d at 728.  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *Id.* (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989

F.2d 572, 580 (2d Cir. 1993)); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam) ("[W]e construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor."). This does not mean, however, that the court accepts as true "a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Similarly, a court "cannot rely on a party's unsworn statements in his memorandum to defeat a motion to dismiss for lack of personal jurisdiction." *Williams v. Connecticut*, No. 15-CV-627 (VAB), 2016 WL 4472935, at \*4 (D. Conn. Aug. 24, 2016) (collecting cases).

A prima facie showing of personal jurisdiction involves a two-step analysis.[3] *See Chloe*, 616 F.3d at 163. "First, we apply the forum state's long-arm statute." *Id.* The relevant provision of New York's long-arm statute, Civil Practice Law and Rules Section 302 ("CPLR 302(a)(1)"),[4] "states that 'a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state.'" *Chloe*, 616 F.3d at 169 (quoting CPLR 302(a)(1)).

"[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of [S]ection 302(a)(1)." *Id.* Instead, "New York decisions . . . focus[] on . . . whether the defendant's conduct constitutes 'purposeful availment.'" *Id.* (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) (alterations omitted)).

---

[3] A plaintiff must also show proper service. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). As Defendants do not dispute that service was proper, the Court does not address it.

[4] Defendants assert that the only relevant provision is CPLR 302(a)(1), which Plaintiffs do not dispute. (*See* Defs.' Mem. at 15; *see generally* Pls.' Opp'n.)

To determine whether a defendant has "purposefully availed" itself of the forum state, courts consider several factors, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 291 (E.D.N.Y. 2013).  "[T]he 'mere solicitation of business within the state does not constitute the transaction of business within the state' absent some other New York-directed activities."  *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219–20 (2d Cir. 2004) (summary order) (quoting *O'Brien v. Hackensack Univ. Med. Ctr.*, 760 N.Y.S.2d 425, 427 (N.Y. App. Div. 2003)).  However, "[S]ection 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 497 (S.D.N.Y. 2015), *aff'd*, 668 F. App'x 373 (2d Cir. 2016) (summary order).

Even where a defendant purposefully transacts business within New York, "the claim asserted must arise from that business activity" for jurisdiction under Section 302(a)(1) to be established. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 419 N.E.2d 321, 323–34 (N.Y. 1981)). A plaintiff's claim arises from a defendant's contacts with New York if, "in light of all the circumstances, there [is] an articulable nexus or substantial relationship" between the asserted claim and the defendant's contacts. *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012) (internal quotation marks and citations omitted); *accord Sole Resort*, 450 F.3d at 103.  "[C]ausation is not required";

the standard merely connotes "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former," *Licci*, 984 N.E.2d at 900, such as where "at least one element [of the plaintiff's cause of action] arises from the New York contacts," *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017) (quoting *Licci*, 984 N.E.2d at 893). While this standard is "relatively permissive," claims that are "too attenuated" or "merely coincidental" do not suffice. *Id.* (first quoting *Licci*, 984 N.E.2d at 893, then quoting *Johnson v. Ward*, 829 N.E.2d 1201, 1203 (N.Y. 2005)).

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164. "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.* "With respect to minimum contacts, we must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* "For purposes of this inquiry, a distinction is made" between "general" jurisdiction and "specific" jurisdiction. *Id.* General jurisdiction exists where an individual defendant is domiciled or where a corporation is "essentially at home." *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). In contrast, "[s]pecific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Chloe*, 616 F.3d at 164 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)).[5] As to reasonableness, "[w]here a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling

---

[5] Plaintiffs assert only specific jurisdiction over Defendants. (*See* Am. Compl. ¶ 28 ("Each of the [D]efendants is subject to personal jurisdiction in New York pursuant [to] CPLR 302.").)

case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (internal quotation marks omitted).

> **B.    Application**

Defendants argue that the Court lacks personal jurisdiction over them because they did not "transact" business in New York within the meaning of CPLR 302(a)(1) and, if they did, there is no nexus between Plaintiffs' claims and Defendants' contacts with New York. (*See* Defs.' Mem. at 17–22.)  The Court considers personal jurisdiction as to each Defendant in turn.

> 1.    Defendant Kaldykulov

The Court holds that it has personal jurisdiction over Defendant Kaldykulov as to all claims against him.

To begin, Kaldykulov has transacted business in New York within the meaning of CPLR 302(a)(1).  Namely, by forming a New York company—Elefund LLC—Kaldykulov sought to avail himself of the benefits and protections of New York law.  (*See* Am. Compl. ¶¶ 18, 29; Mavashev Decl. ¶ 6); *Chloe*, 616 F.3d at 169 (noting that CPLR 302(a)(1) applies to a party who "conduct[s] activities within the . . . State, thus invoking the benefits and protections of its laws" (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007)); (Decl. of Robin L. Alperstein in Opp'n to Defs.' Mot. to Dismiss or Compel Arbitration ("Alperstein Decl.") Ex. A, Dkt. 11-21 (indicating Elefund LLC's registration in New York); *see also* Elefund LLC Operating Agreement at ECF 2, 5 (indicating Kaldykulov's agreement to locate Elefund LLC's principal place of business in New York).)  Further, by seeking out Mavashev in New York as his business partner, by drafting the Elefund LLC Operating Agreement that created Elefund LLC as a New York company, and by agreeing to open and fund Elefund LLC's bank account in New York,

Kaldykulov's activity was purposeful.  (Am. Compl. ¶¶ 31, 34; Mavashev Decl. ¶¶ 3, 6; *see also* Alperstein Decl. Ex. A, Dkt. 11-21 (listing Kaldykulov as Elefund LLC's agent for service of process, at a New York address)); *Licci*, 984 N.E.2d at 899 ("[T]he first prong of [CPLR 302(a)(1)] . . . may be satisfied by the defendant's use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established, *if* the defendant's use of that account was purposeful.").  These acts are sufficient to establish that Kaldykulov transacted business in New York under Section 302(a)(1).  *See Cohen*, 144 F. Supp. 3d at 497.

To fully satisfy CPLR 302(a)(1), however, Plaintiffs' claims must also arise from Kaldykulov's transaction of business in New York.  *See Sole Resort*, 450 F.3d at 103.  The Court finds that they do.  In essence, Plaintiffs allege that Kaldykulov:

- Breached his fiduciary duty to at all times take actions that would promote Plaintiffs Mavashev's and Elefund LLC's best interests, by secretly forming Fund II and GP II and misappropriating Elefund LLC's assets without Plaintiffs' consent, (Am. Compl. ¶¶ 118–23);

- Misappropriated corporate opportunity by launching and creating Fund II and GP II using the Elefund mark, brand, goodwill, and track record of Fund I, whose own performance and track record was a function of the assets contributed by Elefund LLC, and doing so even though Kaldykulov and Mavashev had explicitly discussed and agreed to launch additional Elefund funds, (*id.* ¶¶ 124–35);

- Breached the Elefund LLC Operating Agreement by taking actions without Mavashev— i.e., not in "unison"—by stealing funds out of Elefund LLC's [bank] account, assigning the Elefund mark to Elefund Management Company and using it to launch Fund II and other Elefund entities, and failing to use Elefund LLC as the Fund I management company or to structure Elefund Management Company so as to make Mavashev a co-equal member and participant in its profits, (*see id.* ¶¶ 136–44);

- Tortiously interfered with prospective business relations by stealing Elefund LLC's funds, trade name, and track record and passing them off as Defendants' own (*id.* ¶¶ 154–59), and was unjustly enriched by similar acts, (*id.* ¶¶ 165–71);

- Conspired to commit fraud by cutting Mavashev out of the formation of Fund II and GP II even though all Defendants knew that Mavashev and Kaldykulov were "in the midst" of

forming a second fund and Mavashev was entitled, as a co-equal member of Elefund LLC, to a 50/50 role in any Elefund-related ventures, (*id.* ¶¶ 181–88);

- Engaged in deceptive acts and practices by misleading consumers into believing that the Fund II, GP II, Continuity II, and Continuity III services are authorized, sponsored, or otherwise affiliated with Elefund LLC, (*id.* ¶¶ 194–99); and

- Engaged in unfair competition via conduct likely to confuse or deceive consumers as to the origin, sponsorship, affiliation, connection, or association of Elefund LLC with Defendants' goods and services, (*id.* ¶¶ 200–17).

All of these allegations share a common thread: they assert actions by Kaldykulov in violation of the Elefund LLC Operating Agreement.  Far from a "mere coinciden[ce]," *see D&R Glob. Selections*, 78 N.E.3d at 1176, Plaintiffs' claims fundamentally relate to Kaldykulov's formation of Elefund LLC and the terms of the Elefund LLC Operating Agreement under the auspices of New York law.

The Court further finds that the exercise of personal jurisdiction over Kaldykulov comports with constitutional principles of due process. *See Chloe*, 616 F.3d at 164; *id.* at 171 ("We conclude that assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies [CPLR 302(a)(1)][,] [n]amely, by . . . [']invoking the benefits and protections of [New York's] laws.'" (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Given that Kaldykulov reached out to Mavashev about starting a business together, "which led to an on-going contractual and business relationship between the parties[,] . . . and [that] [Kaldykulov] continued to communicate with [Mavashev] and enter into multiple additional [ventures], this is one of those cases where the nature and quality of [Kaldykulov's] contacts with the forum state, as alleged, support long-arm jurisdiction even though [Kaldykulov] did not maintain a New York presence." *See Allied Dynamics Corp.*, 965 F. Supp. 2d at 291.  Furthermore, contrary to Defendants' argument, the fact that the Elefund LLC Operating Agreement lacks a choice of law clause is not dispositive.  (*See* Defs.' Mem. at 21); *Allied Dynamics Corp.*, 965

F. Supp. 2d at 291 (citing *Sandoval v. Abaco Club*, 507 F. Supp. 2d 312, 317–18 (S.D.N.Y. 2007) (explaining that although "the existence of [a choice-of-law clause] is a 'significant' factor in a personal jurisdiction analysis[,] . . . the absence of one has no bearing on the issue of personal jurisdiction")).

For these reasons, the Court finds that it has personal jurisdiction over Kaldykulov as to all of Plaintiffs' claims against him.

2.   Defendant Rodland

In contrast, the Court finds that it lacks personal jurisdiction as to Defendant Rodland because Plaintiffs have failed to allege sufficient facts regarding Rodland's contacts with New York.

Plaintiffs allege that Rodland, a resident of Texas, was brought on as Kaldykulov's new business partner in the formation of Fund II, a Delaware company with its principal place of business in California.  (*See* Am. Compl. ¶¶ 10, 20, 23, 76; Mavashev Decl. ¶ 16.)  Although Plaintiffs assert various acts of wrongdoing by Rodland—for example, that Rodland was unjustly enriched from his improper use of the Elefund trade name and goodwill to market Fund II, (*see* Am. Compl. ¶ 166 (Unjust Enrichment)); that Rodland "participated in marketing [the improperly-obtained "Elefund" name] to investors," (*see id.* ¶¶ 154–59 (Tortious Interference with Prospective Business Relations)); and that Rodland "met with investors without [Mavashev's knowledge or consent]," (*see id.* ¶ 185 (Conspiracy to Commit Fraud))—Plaintiffs do not specifically allege that any of those acts occurred in New York.[6]  As it is Plaintiffs' burden to establish personal

---

[6] Although the allegation that Rodland "participated in marketing [the improperly-obtained "Elefund" name] to investors," (*see* Am. Compl. ¶¶ 154–59 (Tortious Interference with Prospective Business Relations)), partially overlaps with the allegation that Kaldykulov "tortiously interfered with prospective business relations by stealing Elefund LLC's funds, trade name, and

jurisdiction over each defendant, *see In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), the Court finds that Plaintiffs have not carried their burden as to Rodland and that the Court therefore lacks personal jurisdiction over Rodland with respect to Plaintiffs' claims in this matter.[7]

### 3. Defendant Crissi

The Court holds that it has personal jurisdiction over Defendant Crissi as to Plaintiffs' unjust enrichment, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty claims, but not as to Plaintiffs' tortious interference with prospective business relations claim.

In sum and substance, Plaintiffs allege that Crissi was hired to work for and was paid by Elefund LLC, a New York company, to serve as the company's operations manager, and that Crissi was constantly reporting to Mavashev in New York. (*See, e.g.*, Mavashev Decl. ¶¶ 26–27; Mavashev Decl. Ex. Q, Dkt. 11-18, at ECF 2.) Crissi "frequently communicated with [Mavashev] in New York about the business of the Elefund entities. He called [Mavashev] in New York, sent emails to [Mavashev] in New York, and mailed documents to [Mavashev] in New York, all in

---

track record and passing them off as Defendants' own, (*id.* ¶¶ 154–59), that allegation against Kaldykulov only supports the conclusion that Kaldykulov availed himself of New York when considered in combination with the other allegations about Kaldykulov's conduct *in* New York relating to Elefund LLC—conduct that has not been alleged as to Rodland. Standing alone, the single, similar allegation about Rodland marketing the Elefund name to investors is insufficient to support a finding of personal jurisdiction as to him.

[7] The Court notes Rodland's concession that he traveled to New York to meet with a potential Fund II investor in 2018 or 2019. (Decl. of Nathan Rodland in Supp. of Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 10-24 ¶ 9.) Even if this *could* establish Plaintiffs' prima facie case of personal jurisdiction as to Rodland, *MacDermid*, 702 F.3d at 727–28, it does not, as, absent evidence that any transaction was consummated, the Amended Complaint is silent as to whether Rodland "transact[ed] business" at those meetings, *see Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11-CV-1616 (RJH), 2011 WL 5838697, at *11–12 (S.D.N.Y. Nov. 21, 2011) (collecting cases holding that mere meetings, where nothing substantive came of them, do not amount to the transaction of business).

connection with 'Elefund' related business." (Mavashev Decl. ¶ 27.) He also "made reports and representations to Mavashev that were intended to lead Mavashev to believe, and which Mavashev relied upon and did believe, that Fund II was being set up to include Mavashev." (Am. Compl. ¶ 176.)

These allegations are enough to establish the "transaction of business" in New York. Crissi's New York contacts resemble those in cases involving defendants who transacted business by "interact[ing] with their employer's New York headquarters, access[ing] data maintained by their employer in New York, avail[ing] themselves of the benefit of being employed by a New York company, and generat[ing] profits for a New York company." *Mercator Risk Servs., Inc. v. Girden*, No. 08-CV-10795 (BSJ), 2008 WL 5429886, at *3 (S.D.N.Y. Dec. 30, 2008) (finding "transact[ion] [of] business" under CPLR 302(a)(1)); *see also Porco v. Phoenix Bldg. Corp.*, No. 18-CV-5938 (NSR), 2019 WL 2210659, at *4 (S.D.N.Y. May. 21, 2019) (finding "transact[ion] [of] business" where defendant "purposefully communicated with [p]laintiff about potential investments through email, text messages, and phone calls"). This is particularly the case where Crissi's outreach to Mavashev in New York was "part of [his] principal reason for being," that is, his role as an operations manager for the Elefund business. *See Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (finding CPLR 302(a)(1) satisfied where debt collection-focused law firm "mail[ed] one debt collection notice," "engag[ed] in one debt collection phone call," and "mail[ed] a summons and complaint" to New York).

However, the Court does not find the next step of the analysis satisfied as to one of the claims against Crissi—i.e., a "substantial relationship" between Crissi's reporting to Mavashev in New York and Plaintiffs' claim of tortious interference with prospective business relations against Crissi. *See Licci*, 984 N.E.2d at 900. With respect to that claim, Plaintiffs allege that Crissi

14

misappropriated the Elefund name to market Fund II to investors, (*see* Am. Compl. ¶¶ 154–59), and although Plaintiffs allege that Crissi communicated extensively with Mavashev in New York, (*see* Pls.' Opp'n at 18–19), there is no allegation connecting those New York-directed communications to Crissi's purported misappropriation of the Elefund name to market Fund II to investors. To the contrary, Plaintiffs allege that Crissi and the other Defendants kept Mavashev in the dark about the activities of Fund II. The Court thus finds that Plaintiffs' tortious interference claim does not "arise" from Crissi's transaction of business in New York.

Despite the foregoing, there appears to be a substantial relationship between Plaintiffs' claims against Crissi for the remaining claims against him—unjust enrichment, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty—on the one hand, and Crissi's transaction of business in New York, on the other. Plaintiffs allege that Crissi led Mavashev to believe "that Fund II was proceeding in accordance with the 50/50 partnership contained in the Elefund Operating Agreement," (Am. Compl. ¶ 171 (Unjust Enrichment)); that Crissi, along with Kaldykulov, "[led] the efforts" to "keep Mavashev in the dark" by "intentionally pretending that Fund II was being formed to include Mavashev, so that he never suspected a thing," (*id.* ¶ 185 (Conspiracy to Commit Fraud)); and that Crissi "made reports and representations to Mavashev that were intended to lead Mavashev to believe, and which Mavashev relied upon and did believe, that Fund II was being set up to include Mavashev," (*id.* ¶ 176 (Aiding and Abetting Breach of Fiduciary Duty)). Crissi's reports to Mavashev in New York are thus a key piece of each of those causes of action as alleged by Plaintiffs, as his activities gave rise to Plaintiffs' claims. *See Sole Resort*, 450 F.3d at 103; *Licci*, 984 N.E.2d at 900.

For similar reasons, the Court's exercise of personal jurisdiction over Crissi comports with due process, as both the minimum contacts and reasonableness analyses are satisfied. *See Floyd's*

*of Leadville, Inc. v. Alexander Cap., LP*, No. 22-CV-3318 (MKV), 2023 WL 6198666, at *6 (S.D.N.Y. Sept. 22, 2023) (noting that "New York's long-arm statute does not extend to the full extent of the Due Process Clause," although a case in which personal jurisdiction is permitted under New York's long-arm statute but "prohibited under due process analysis" would be "rare"). As explained above, Plaintiffs allege that Crissi purposefully reached into New York to transact business in a manner intended to deceive Mavashev as to his involvement in Fund II. *See, e.g.*, *Mercator*, 2008 WL 5429886, at *3. Crissi thus possesses sufficient minimum contacts with New York for purposes of this lawsuit. *See Floyd's of Leadville*, 2023 WL 6198666, at *6. As to reasonableness, Crissi does not argue that personal jurisdiction in New York would be unreasonable. *See Bank Brussels Lambert*, 305 F.3d at 129; (*see generally* Decl. of Ariel Crissi in Supp. of Defs.' Mot. to Dismiss or Compel Arbitration, Dkt. 10-17 ("Crissi Decl.").) In fact, Crissi acknowledges that he has traveled to New York "at various points" in the past, and there is no suggestion that he could not do so now. (*See* Crissi Decl. ¶ 30.)

For all of these reasons, the Court finds that it has personal jurisdiction over Crissi with respect to Plaintiffs' claims for unjust enrichment, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty.

### 4.   Defendant Fundamatic

The Court finds that it may not exercise personal jurisdiction over Fundamatic. Plaintiffs fail to allege that Fundamatic transacted business in New York within the meaning of CPLR 302(a)(1).

Plaintiffs assert only one discernible contact between Fundamatic, a Colorado company with its principal place of business in Colorado, and New York: that Fundamatic entered into a

contract with a New York entity, Elefund LLC.[8]   (Am. Compl. ¶¶ 18, 26, 27, 29, 64.)   By itself, entering into a contract with a New York counterparty is not enough to "transact business" under CPLR 302(a)(1).   *See Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (summary order) (finding no transaction of business under CPLR 302(a)(1) where Illinois company negotiated agreement via phone calls and emails to New York and ultimately returned signed contract to New York, because contract "was to be performed entirely outside of New York"); *cf. Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 n.2 (2d Cir. 1974) ("[T]here is a distinction between a contract's place of execution and the location of the jurisdictional forum.").

Without more, the Court cannot find that Fundamatic transacted business in New York. Accordingly, the Court lacks personal jurisdiction over Fundamatic.

---

[8] Plaintiffs do not argue that—nor do the parties address whether—the Court may exercise personal jurisdiction over Fundamatic based on Crissi's contacts with New York.  Even if they had, Plaintiffs could not carry their burden to establish personal jurisdiction based solely on that theory, as the relevant law is unclear.  "In a federal question action where a federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state."  *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 350 (S.D.N.Y. 2019) (quoting *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 436 n.3 (S.D.N.Y. 2001)).  Under New York's choice-of-law rules, whether the corporate veil will be pierced depends on the law of the state of incorporation.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995); *Cohen v. Schroeder*, 248 F. Supp. 3d 511, 518 n.4 (S.D.N.Y. 2017).  Fundamatic is a Colorado company.  (Am. Compl. ¶ 27.)  "There is no question that reverse veil-piercing exists in Colorado law, but [the Colorado Supreme Court] did not discuss personal jurisdiction [in the relevant case, *In re Phillips*,] at all.  That case instead concerned liability."  *Titan Feeding, LLC v. Corey Cattle Co., LLC*, No. 19-CV-2541 (PAB) (SKC), 2022 WL 4182458, at *14 (D. Colo. Sept. 13, 2022) (footnote omitted) (citing *In re Phillips*, 139 P.3d 639, 646 (Colo. 2006)).  "Unlike in *Phillips*, the issue here is whether plaintiff can rely solely on reverse veil piercing for the Court's personal jurisdiction over [the corporate defendant] [based on the forum contacts of its sole owner]."  *Id.*  While a Colorado district court has held that it "is unfair to impute to the dominated corporation the forum contacts of its alter ego," it did so based on a Tenth Circuit case that interpreted Oklahoma law, and it appears that the Colorado Supreme Court has not weighed in on whether a corporate defendant may be subject to personal jurisdiction based on its sole owner's forum contacts.  *See id.* at *13.

5.    <u>Defendant Fund II</u>

The Court holds that it cannot exercise personal jurisdiction over Defendant Fund II. Although Fund II is in many ways at the heart of this litigation, Plaintiffs do not assert sufficient information regarding Fund II's contacts with New York. Further, Fund II's limited contacts with New York are insufficiently related to the causes of action brought against it to warrant the exercise of personal jurisdiction.

Plaintiffs allege that Fund II is a Delaware company with its principal place of business in California. (Am. Compl. ¶ 22.) Neither the Amended Complaint nor Plaintiffs' sworn declarations and exhibits in opposition to Defendants' motion allege any contact between Fund II and New York. (*See generally id.*; Dkts. 11–11-22.) Plaintiffs have therefore failed to meet their burden to allege personal jurisdiction as to Fund II. *See Charles Schwab Corp.*, 883 F.3d at 83; *MacDermid*, 702 F.3d at 725.

The Court notes Defendants' concession that Fund II "has invested in . . . one portfolio company in New York." (Kaldykulov Decl. ¶ 36.) Even if this fact could carry Plaintiffs' burden to establish personal jurisdiction over Fund II, *see Charles Schwab Corp.*, 883 F.3d at 83, Plaintiffs' claims against Fund II do not arise from that contact, *see Licci*, 984 N.E.2d at 900. Plaintiffs' claims turn on allegations that Defendants "cut[] Mavashev completely out of his right to participate" in Fund II's business, (*see* Am. Compl. ¶¶ 181–88 (Conspiracy to Commit Fraud)); "recei[ved] and use[d] . . . the [Elefund] trade name and associated goodwill in connection with Fund II," (*see id.* ¶¶ 189–93 (Aiding and Abetting Breach of Fiduciary Duty)); "mis[led] consumers into believing that their services are authorized, sponsored, or otherwise affiliated with Elefund LLC," (*see id.* ¶¶ 194–99 (Deceptive Acts and Practices)); "unfairly commercially benefit[ted] from the goodwill associated with the [Elefund] trade name," (*see id.* ¶¶ 200–07

(Federal Unfair Competition)); and "mis[led] consumers into believing that services rendered under the [Elefund] mark originated with or are authorized by Elefund LLC," (*see id.* ¶¶ 208–17 (Common Law Unfair Competition)).  All of those allegations suggest that use of the "Elefund" name by Fund II led *others* to invest with or otherwise seek the services of Fund II, which has no obvious bearing on Fund II's *own*, separate investment activities.  *See NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009) (holding that "[CPLR] 302(a)(1) does not provide a basis for personal jurisdiction" where "investments [by an investment fund defendant] in New York-based funds" have "no nexus . . . [to] the claims at issue," there, false advertising and unfair competition claims arising from investment fund defendant's marketing activities).  Thus, the Court holds that it cannot exercise specific personal jurisdiction over Fund II.

6.    Defendant GP II

Nor can the Court exercise personal jurisdiction over Defendant GP II.  There is no indication that GP II has sufficient minimum contacts with New York to warrant the Court's exercise of personal jurisdiction.  Plaintiffs assert no facts specifically regarding GP II's contacts with New York, instead raising only general allegations, such as:

- GP II has, "in bad faith, misappropriated a commercial advantage belonging exclusively to Elefund LLC through the exploitation of the [Elefund] trade name," (Am. Compl. ¶ 89);

- GP II has "improperly misappropriated the [Elefund] trade name and capitalized on the accompanying goodwill for [its] own benefit and for investments that were not authorized by Elefund LLC thereby damaging Elefund LLC's own reputation as well as Mavashev's, depriving Elefund LLC of a commercial advantage belonging exclusively to it and unjustly enriching [itself]," (*id.* ¶ 98);

- GP II has "incorporated additional smaller fund entities that misappropriate the [Elefund] trade name for [its] commercial benefit," (*id.* ¶ 111);

- GP II "agreed to form Fund II . . . by cutting Mavashev completely out of his right to participate," (*id.* ¶ 184); and

- "[GP II] provided an act of substantial assistance in furtherance of Kaldykulov's breaches of fiduciary duty," (*id.* ¶ 191).

None of these allegations, the other allegations mentioning GP II, or Plaintiffs' submissions in opposition to Defendants' motion suggest any particular contacts by GP II with New York. The Court therefore cannot find that GP II engaged in "purposeful availment" of New York law's benefits and protections, *see Chloe*, 616 F.3d at 169, and cannot exercise personal jurisdiction over GP II.

### 7.   Defendant Elefund Management Company

The Court lacks personal jurisdiction over Defendant Elefund Management Company because Plaintiffs fail to establish that Elefund Management Company "transacts" business in New York within the meaning of CPLR 302(a)(1).

The Amended Complaint alleges that Elefund Management Company is a Delaware company with its principal place of business in California. (Am. Compl. ¶ 24.) Notwithstanding that allegation, Plaintiffs' opposition papers speculate that Elefund Management Company's principal place of business is Elefund LLC's New York office. (Mavashev Decl. ¶ 13.) In support of this assertion, Plaintiffs assert that Elefund Management Company received a letter from the IRS addressed to Elefund LLC's New York office, attached as Exhibit G to Mavashev's declaration, and that Elefund Management Company's 2016 tax return provides a New York address.[9] (Mavashev Decl. ¶ 13; *see also* Mavashev Decl. Ex. G, Dkt. 11-8.)

Setting aside Plaintiffs' own inconsistencies regarding Elefund Management Company's principal place of business,[10] *cf. MacDermid*, 702 F.3d at 728, the mere receipt of mail in New

---

[9] The purported 2016 tax return is not included as an exhibit with Plaintiffs' submission.

[10] In addition, the Court notes Defendants' sworn statement that "[Elefund Management Company] is a limited liability company organized under the laws of Delaware that maintains its

York is insufficient to constitute the "transaction" of business under CPLR 302(a)(1).  *See On Line Mktg. Inc. v. Thompson Outfitters, Inc.*, No. 99-CV-10411 (HB), 2000 WL 426426, at *3 (S.D.N.Y. Apr. 20, 2000) ("[M]ailings, . . . can confer personal jurisdiction only if the defendant conducted these activities to actively participate in business dealings in New York, and in order to 'purposely avail' themselves of the benefits of doing business in New York."  (citation omitted) (citing *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996))).  Here, there is no evidence that the receipt of mail by Elefund Management Company—a Delaware company with its principal place of business in California—received mail in New York in order to "purposely avail" itself of the benefits of doing business in New York.  Thus, the Court declines to exercise personal jurisdiction over Elefund Management Company.

### 8.   Defendants Continuity II and Continuity III (the "Continuity Defendants")

Plaintiffs have failed to adduce sufficient support for the Court's exercise of personal jurisdiction over the Continuity Defendants.  To start, the Amended Complaint does not allege any nonconclusory, specific actions taken by either of the Continuity Defendants, let alone any contacts by the Continuity Defendants with New York.  (*See* Am. Compl. ¶¶ 25–26 (alleging that the Continuity Defendants are Delaware companies with principal places of business in California); *id.* ¶ 111 (alleging that Continuity Defendants "misappropriate the [Elefund] trade name"); *id.* ¶¶ 113–16 (mentioning Continuity Defendants regarding demand futility); *id.* ¶ 193 (alleging that the Continuity Defendants "provided substantial assistance" to Kaldykulov's breaches of fiduciary duty); *id.* at 49 (seeking damages against Continuity Defendants).)  Thus, even construing the

---

principal place of business in California. . . .  It does not have any employees or offices in New York."  (Kaldykulov Decl. ¶ 35.)

allegations in the complaint in the light most favorable to Plaintiffs, *Dorchester Fin. Sec.*, 722 F.3d at 85, there is nothing to support personal jurisdiction over the Continuity Defendants.

Plaintiffs argue in their opposition that "[d]uring the relevant period, [the Continuity Defendants] operated out of New York, used a New York address for their business affairs, and marketed themselves as operating in New York as part of the Elefund Group," and that "[e]ach of these defendants directed its official business and correspondence to New York and held itself out as a New York business."  (Pls.' Opp'n at 20.)  "[A plaintiff] may not . . . rely on the unsworn statements in his memorandum of law in order to make a prima facie showing of personal jurisdiction"; instead, Plaintiffs must rely on allegations in their Amended Complaint or sworn declarations.  *Guo Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG) (SMG), 2008 WL 896192, at *2 n.3 (E.D.N.Y. Mar. 31, 2008) (emphasis omitted); *cf. Craig v. First Web Bill, Inc.*, No. 04-CV-1012 (DGT), 2004 WL 2700128, at *1 n.3 (E.D.N.Y. Nov. 29, 2004) (collecting cases and noting that "factual allegations proffered in a brief or memorandum do not constitute facts which may considered on this motion [to dismiss under Rule 12(b)(2)], unless they are supported by affidavits or other evidence").

Although Plaintiff Mavashev's sworn declaration asserts that the Continuity Defendants "used Elefund LLC's New York office address as their place of business," (Mavashev Decl. ¶ 15), this contradicts Plaintiffs' allegation in the Amended Complaint that the Continuity Defendants' principle places of business are in California, (Am. Compl. ¶¶ 25–26), and the Court cannot find a prima facie showing of personal jurisdiction in light of this ambiguity.  To the extent that Plaintiffs' evidence of an "IRS notice sent to defendant Elefund Continuity II LLC at its New York address" is intended to cure such ambiguity, it does not do so, as "mail contacts [generally] do not provide a basis for jurisdiction under CPLR § 302(a)(1)."  *See Pincione v. D'Alfonso*, 506 F. App'x

22, 24 (2d Cir. 2012) (summary order); *Treboux v. Trickey*, No. 19-CV-4595 (CM), 2019 WL 2502180, at *3 (S.D.N.Y. June 14, 2019) (holding that plaintiff failed to establish personal jurisdiction based solely on defendant's post office box in New York); (Mavashev Decl. ¶ 15; Mavashev Decl. Ex. G, Dkt. 11-8.)  The Court has found no case supporting personal jurisdiction based on the mere receipt of mail in New York, particularly where that mail is not alleged to relate to the causes of action brought against the defendant who is challenging personal jurisdiction.  The Court therefore declines to exercise personal jurisdiction against the Continuity Defendants in this case.

*        *        *

In sum, the Court finds that it has personal jurisdiction as to all claims against Defendant Kaldykulov and as to Plaintiff's claims for unjust enrichment, conspiracy to commit fraud, and aiding and abetting fiduciary duty against as to Defendant Crissi, but not as to any claims against any other Defendant.

## II.    Defendants' Motion to Transfer Venue

As to any remaining claims, Defendants seek to transfer this action to the Northern District of California.  Because Defendants have failed to demonstrate why venue would be proper in that district, that request is denied.

A federal district court may transfer a civil action "to any other district or division where it might have been brought" when transfer will serve "the convenience of parties and witnesses" or furthers "the interest of justice."  28 U.S.C. § 1404(a); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 719 (2d Cir. 2010).  "In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the

interests of justice." *Flores v. United States*, 142 F. Supp. 3d 279, 286 (E.D.N.Y. 2015) (quoting *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012)).

Here, Defendants have failed to address whether this action could have been brought initially in the Northern District of California and have thus waived any argument to transfer their remaining claims to that district. (*See* Pls.' Opp'n at 23–24 (arguing Defendants' waiver); Defs.' Mem. at 22–25 (stating standard but then solely analyzing factors regarding convenience of parties and interests of justice); Defs.' Reply at 12 n.7 (arguing that their recitation of the standard for transfer of venue constituted "argu[ment] . . . that transfer was appropriate").) Although Defendants assert that their opening brief "emphasized that 'California is the primary situs of the underlying transactions, and nearly all of Defendants' investments and investors are located there,'" (Defs.' Reply at 11), Defendants' submissions are plainly lacking an analysis of why venue might be proper in that district or whether Defendants are subject to personal jurisdiction under California's long-arm statute, *see, e.g.*, *Gendreau v. Kigawa*, No. 13-CV-3217 (LTS) (DCF), 2014 WL 6487426, at *3–4 (S.D.N.Y. Nov. 14, 2014) ("A district in which the action might have been brought 'has been interpreted to mean a district where venue might have been proper and where the defendant would have been subject to process.' . . . [T]he parties discuss California's long-arm statute, which extends personal jurisdiction up to the limits of due process." (quoting *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 691–92 (S.D.N.Y. 1994))); *cf. Discover Prop. & Cas. Ins. Co. v. TETCO, Inc.*, 932 F. Supp. 2d 304, 311 (D. Conn. 2013) (noting that in support of transfer, defendants argued that suit could have been brought "in Texas as all parties are subject to personal jurisdiction in the Southern District of Texas"); (*see generally* Defs.' Mem. at 22–25.)

Absent any indication that the Northern District of California could have exercised personal jurisdiction over Defendants in the first instance, Defendants have waived their transfer-

of-venue argument.  *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 650–51 (S.D.N.Y. 2021)

(finding argument that was insufficiently developed to be forfeited); *DoubleLine Cap. LP v.

Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 450 (S.D.N.Y. 2018) (finding waiver of argument that

was not raised in opening brief); *Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014

WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that '[i]ssues mentioned in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived.'" (quoting *Lyn v. Hempstead*, No. 03-CV-5041 (DRH), 2007 WL 1876502, at *16 n.13

(E.D.N.Y. June 28, 2007) (internal quotation marks omitted), *aff'd*, 308 F. App'x 461 (2d Cir.

2009) (summary order))).   Even if the Court were to consider Defendants' venue-transfer

arguments in their reply, the Court would find them insufficient.  (*See* Defs.' Reply at 12 (asserting

without analysis that Defendants' activities "provide a basis for general jurisdiction in California

over Kaldykulov and the Elefund entities, and specific jurisdiction over the rest of the Defendants"

and implying that venue is proper in California because "Plaintiffs do not even attempt to explain

why there would not have been jurisdiction" there).)  Accordingly, the Court denies Defendants'

motion to transfer venue.

## III.    Defendants' Motion to Compel Arbitration

As an alternative to Defendants' motions to dismiss based on personal jurisdiction and to

transfer venue, Defendants ask this Court to compel arbitration of Plaintiffs' remaining claims, or

at least submit the question of arbitrability—that is, whether Plaintiffs' claims must be arbitrated—

to an arbitrator.  (Defs.' Mem. 25–36; Reply at 13.)   In support, Defendants point to two

substantially similar arbitration clauses contained in two agreements that, separately or together,

bind Mavashev, Kaldykulov, Elefund LLC, and Crissi.  (*See* Defs.' Mem. 25–26.)  For the reasons

explained below, the Court finds that these provisions require the question of arbitrability to be

decided by an arbitrator.  The Court does not reach the underlying question of whether Plaintiffs' claims must be arbitrated.

"[T]he arbitrability of a given issue is a question for the court unless there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 897 (2d Cir. 2015) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–99 (2d Cir. 1996)); *accord James & Jackson, LLC v. Willie Gary, LLC* (hereinafter "*Willie Gary*"), 906 A.2d 76, 78 (Del. 2006).  Here, notwithstanding the parties' primary application of federal law, the parties do not dispute that the relevant arbitration agreements (as discussed *infra*) are governed by Delaware law.  (*See* Defs.' Mem. at 30 (stating that Delaware law governs the arbitration agreements but applying federal law); Pls.' Opp'n at 34 (citing Delaware and federal law); Defs.' Reply at 21, 23 (same).)  Thus, the Court applies Delaware law as to whether there is a "clear and unmistakable" intent for an arbitrator to decide arbitrability of Plaintiffs' claims.  *See Benihana, Inc.*, 784 F.3d 897; *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (stating that where parties' briefs assume that a particular state's law controls, "such implied consent . . . is sufficient to establish choice of law"); *see also Willie Gary*, 906 A.2d at 78.

"[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Willie Gary*, 906 A.2d at 79 (quoting *Contec Corp. v. Remote Sol. Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)).  Further, where an arbitration clause "commits to arbitration 'any dispute concerning the . . . interpretation of the [agreement],'" the parties generally have demonstrated their clear and unmistakable intent to submit questions of

arbitrability to an arbitrator. *See State v. Corr. Officers Ass'n of Del.*, No. 11926-VCL, 2016 WL 6819733, at *5–6 (Del. Ch. Nov. 18, 2016) (citing *Willie Gary*, 906 A.2d at 80). However, when an "arbitration clause does not generally refer all controversies to arbitration," and instead carves some out for relief in the courts, "something other than the incorporation of [arbitration association] rules [is] needed to establish that the parties intended to submit arbitrability questions to an arbitrator." *See Willie Gary*, 906 A.2d at 81. Even if that "something other" is present, a carve-out that is "obviously broad and substantial" will vitiate what would otherwise be clear and unmistakable evidence of the parties' intent to delegate issues to an arbitrator. *See Corr. Officers Ass'n of Del.*, 2016 WL 6819733, at *6 (quoting *McLaughlin v. McCann* (hereinafter "*McCann*"), 942 A.2d 616, 625 (Del. Ch. Feb. 21, 2008)). "In a case where there is any rational basis for doubt" about the scope of a carve-out, "the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her." *McCann*, 942 A.2d at 625.

Defendants assert that two arbitration clauses, one in the Elefund L.P. Limited Partnership Agreement (the "Fund I Agreement") and one in the Elefund GP I LLC Operating Agreement (the "GP I Agreement") (together, the "Agreements"), require arbitration of arbitrability and Plaintiffs' underlying claims. (Defs.' Mem. 25–36.) The Agreements' arbitration clauses are substantially similar, but have important differences.

The Fund I Agreement's arbitration clause is as follows:

Any claim, dispute, or controversy of whatever nature arising out of or relating to this Agreement, including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach), or concerning the interpretation, effect, termination, validity, performance and/or breach of this Agreement ("***Claim***"), shall be resolved by final and binding arbitration ("***Arbitration***") before a panel of three (3) arbitrators ("***Arbitrators***") jointly selected by the parties to such Arbitration from, and administered by, Judicial Arbitration and Mediation Service Inc. [hereinafter "JAMS"] (the "***Administrator***") in accordance with its then existing arbitration rules or

procedures regarding commercial or business disputes. The arbitration shall be held in San Francisco, California.

(Fund I Agreement, Dkt. 10-8 § 14.14(a).)  Mavashev, Elefund, Kaldykulov, and Crissi are parties to the Fund I Agreement as limited partners in Fund I.   (Dkt. 10-5 at ECF 3 (Mavashev's subscription as a limited partner in Fund I); Dkt. 10-4 at ECF 2–3 (Elefund LLC's contribution as a limited partner in Fund I); Dkt. 10-6 at ECF 3 (Kaldykulov's subscription as a limited partner in Fund I); Dkt. 10-18 at ECF 7 (Crissi's subscription as a limited partner in Fund I); *see also* Dkt. 11-5 (Fund I Limited Partnership Agreement that is referenced in the subscription agreements).[11])

The GP I Agreement's arbitration clause is as follows:

Any claim, dispute, or controversy of whatever nature arising out of or relating to this Agreement (including any other agreement(s) contemplated hereunder), including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach or violation of statutory or common law protections from discrimination, harassment and hostile working environment), or concerning the interpretation, effect, termination, validity, performance and/or breach of this Agreement ("***Claim***"), shall be resolved by final and binding arbitration ("***Arbitration***") before a single arbitrator ("***Arbitrator***") selected from and administered by [JAMS] (the "***Administrator***") in accordance with its then existing arbitration rules or procedures regarding commercial or business disputes. The arbitration shall be held in San Francisco, California.

(GP I Agreement, Dkt. 11-6 § 15.7(a).[12])  Mavashev and Kaldykulov are signatories to the GP I Agreement.  (*Id.* at ECF 9.)

---

[11] Mavashev, Kaldykulov, and Crissi also each signed a document entitled "Subscription Agreement and Investor Questionnaire" that defers "any claim, dispute or controversy of whatever nature arising out of or relating to this Agreement" to "final and binding arbitration in accordance with the terms of the Partnership Agreement."  (*E.g.*, Dkt. 10-18 at ECF 6 ¶ 17.)  In turn, the "Partnership Agreement" refers to the Fund I Limited Partnership Agreement, which contains an arbitration clause identical to that of the Fund I Agreement.  (*Id.* at ECF 2; Fund I Limited Partnership Agreement, Dkt. 11-5 § 14.14; *see also* Fund I Agreement § 14.14.)  Given that the language in the Fund I Limited Partnership Agreement is identical to that of the Fund I Agreement, the Court discusses only the Fund I and GP I Agreements herein.

[12] Both Plaintiffs and Defendants have submitted a version of the GP I Agreement with their filings.  (*See generally* Dkts. 10-7, 11-6.)  Conspicuously, Defendants' version of the GP I

Notably, both Agreements require arbitration of "[a]ny claim, dispute, or controversy of whatever nature arising out of or relating to" the Agreements, including "claim[s], dispute[s], or controvers[ies] . . . concerning the interpretation" of the Agreements, and both Agreements require any such arbitration to be resolved under JAMS's rules or procedures.  Only the GP I Agreement, however, contains a carve-out requiring certain questions of liability between Mavashev and Kaldykulov to be decided by a "court of competent jurisdiction":

> No Member shall be liable to any other Member for any conduct or actions or for failure not to act, except for conduct, actions or inactions determined by a court of competent jurisdiction not to have been undertaken in good faith to promote the best interests of the Company or to constitute willful misconduct.

(*See* GP I Agreement § 5.8 ("Section 5.8"); *see also id.* at ECF 28 (indicating that Mavashev and Kaldykulov are the two members of GP I).)

Applying Delaware law, the Court is constrained by the parties' Agreements to defer the question of arbitrability to an arbitrator.  The Agreements state the parties' intent to submit "[a]ny claim, dispute, or controversy of whatever nature arising out of or relating to [the] Agreement[s]" to arbitration.  (Fund I Agreement, Dkt. 10-8 § 14.14(a); GP I Agreement, Dkt. 11-6 § 15.7(a).) The Agreements further incorporate JAMS's "arbitration rules or procedures."   (Fund I Agreement, Dkt. 10-8 § 14.14(a); GP I Agreement, Dkt. 11-6 § 15.7(a).)  Ordinarily, "reference to the [JAMS] rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator."  *See Willie Gary*, 906 A.2d at 81.  However, Section 5.8 of the GP I Agreement—which allows certain disputes between Mavashev and Kaldykulov to be heard by a court—calls into question whether "all disputes must be referred to arbitration."  *Id.*; (*see* GP I Agreement §

---

Agreement appears to be excerpted and missing key provisions.  (*Compare* Dkt. 10-7, *with* Dkt. 11-6.)  As such, the Court cites to Plaintiffs' complete version of the GP I Agreement.  (*See generally* Dkt. 11-6.)

5.8; *see also* Pls.' Opp'n at 10, 33–34.)  Without deciding the scope of Section 5.8, the Court notes

that in such a situation, "something other than the incorporation of the [JAMS] rules [is] needed

to establish that the parties intended to submit arbitrability questions to an arbitrator." *See Willie*

*Gary*, 906 A.2d at 81.

This "something other" is supplied by the Agreements' explicit statement that even

disputes "concerning the interpretation" of the Agreements shall be submitted to arbitration.  (Fund

I Agreement, Dkt. 10-8 § 14.14(a); GP I Agreement, Dkt. 11-6 § 15.7(a).)  Together, these

statements are "clear and unmistakable" evidence of the parties' intent for an arbitrator to decide

even the threshold question of arbitrability.  *See Corr. Officers Ass'n of Del.*, 2016 WL 6819733,

at *5–6 (holding that agreement committing to arbitration "any dispute concerning

the . . . interpretation of the [agreement]" satisfies the "clear and unmistakable intent" prong of

*Willie Gary*); *BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 23, 26–27 (Del. Ch. 2007) (holding

that agreement committing to arbitration "all substantive and procedural issues" related to an

agreement was "clear and unmistakable evidence" of intent to submit arbitrability to arbitrator).

Even if they were not, the Court would still defer to arbitration the question of arbitrability based

on the text of Section 5.8, which provides a "rational basis for doubt" as to whether, at minimum,

Plaintiff Mavashev's underlying claims against Defendant Kaldykulov must be arbitrated.

*McCann*, 942 A.2d at 625; *see also Blackmon v. O3 Insight, Inc.*, No. 2020-1014 (SG), 2021 WL

868559, at *3 (Del. Ch. Mar. 9, 2021) (holding that arbitration clause's carve-out permitting

equitable relief from a court created a "rational basis for doubt" as to arbitrability warranting

deferral of question to arbitrator); *cf. Al Thani v. Hanke*, No. 20-CV-4765 (JPC), 2021 WL

4311391, at *7 (S.D.N.Y. Sept. 21, 2021) (addressing argument that a similar clause regarding a

"court of competent jurisdiction" could "muddy the parties' intent" regarding arbitration before

sending a case to arbitration). In such a scenario, "the court should defer to . . . the arbitrator to determine what is or is not before her." *McCann*, 942 A.2d at 625. The Court does so, and grants Defendants' motion to compel arbitration insofar as an arbitrator must decide whether Plaintiffs' claims must be arbitrated.[13]

## IV. Defendants' Rule 12(b)(6) Motion to Dismiss Trademark Cancellation Claim for Failure to State a Claim Upon Which Relief May Be Granted

Defendants move to dismiss Plaintiffs' claim for trademark cancellation, which is brought against Elefund Management Company only. Because the Court finds that it lacks personal jurisdiction over Elefund Management Company, *see supra* Discussion § I.B.7, the Court denies Defendants' motion as moot.

## CONCLUSION

For the foregoing reasons, the Court dismisses for lack of personal jurisdiction the tortious interference with prospective business relations claim against Crissi, and all claims against Rodland, Fundamatic, Fund II, GP II, Elefund Management Company, Continuity II, and Continuity III. The Court denies Defendants' motion to transfer venue to the Northern District of California. The Court denies as moot Defendants' motion to dismiss Plaintiffs' trademark cancellation claim as to Elefund Management Company.

The Court grants Defendants' motion to compel arbitration solely as to the threshold issue of arbitrability of Plaintiffs' remaining claims. Pending resolution of that issue, the Court stays

---

[13] The Court recognizes that Section 5.8 of the GP I Agreement suggests that Mavashev's claims against Kaldykulov alleging conduct "[not] undertaken in good faith to promote the best interests of the Company or . . . constitut[ing] willful misconduct" might have to be adjudicated before this Court, but for the reasons stated above, finds that that decision is to be made by the arbitrator. (*See* GP I Agreement § 5.8 ("No Member shall be liable to any other Member for any conduct or actions or for failure not to act, except for conduct, actions or inactions determined by a court of competent jurisdiction not to have been undertaken in good faith to promote the best interests of the Company or to constitute willful misconduct."); *see also id.* at ECF 28.)

this action with respect to the remaining claims, which are as follows: all of Plaintiffs' claims against Kaldykulov; and Plaintiffs' unjust enrichment, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty claims against Crissi.  Plaintiffs are directed to notify the Court within seven (7) days of a decision regarding arbitrability being rendered.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 30, 2024
       Brooklyn, New York